# THE BRANDI LAW FIRM

354 Pine Street, Third Floor
San Francisco, California 94104
Telephone: (415) 989-1800
Facsimile: (415) 651-9357
bjm@brandilaw.com

September 18, 2012

**Via Electronic Case Filing**

Kandis A. Westmore
United States Magistrate Judge
Northern District of California
Oakland Courthouse, Courtroom 4 - 3rd Floor
1301 Clay Street, Oakland, CA 94612

      Re:    *Zulewski, et al. v. The Hershey Company*
               Case No.: 3:11-CV-05117-KAW

Dear Magistrate Judge Westmore:

      Pursuant to Paragraph 12 of this Court's Standing Order, the parties attest that there was a telephonic meet and confer on September 5, 2012 and September 10, 2012 prior to the filing of this letter.

      The unresolved disputes concern (1) the current scope of discovery in light of Plaintiffs' and Defendant's requests set forth in the August 15, 2012 Joint Case Management Conference Statement; and (2) Defendant's specific objections to certain discovery demands discussed below. Both parties request a hearing on these and the matters set forth in the Joint Status Report.

## Plaintiffs' Position

      As explained in the Joint Status Report filed August 15, 2012, there is no reason to limit the litigation to Hershey's issue (1.5 v. .5), which Hershey wants to narrow even further into whether Plaintiffs thought they were getting overtime. That is not a pertinent issue under any precedent, and at best is a piece of evidence that palls in comparison to other evidence, such as whether Hershey's actual company policy and practice is to pay non-exempt salaried employees time and a half (1.5) - including, at present, the Retail Sales Representatives (RSR) before the Court - as opposed to the half time (.5) Hershey claims it can pay as penalty.

      Second, Plaintiffs contend that there is no stay on discovery, that there should be no stay on discovery, and that Hershey should respond to discovery that was propounded over six months ago, as well as discovery due shortly on whether Hershey is actually now applying its company policy of paying non-exempt salaried employees at 1.5 for overtime to RSRs, which appears to be the case from information Plaintiffs' counsel has recently obtained.[1]

---

[1]     If, as appears the case, Hershey has a company policy of paying non-exempt salaried employees 1.5 for overtime hours, and has extended that policy to cover RSRs after Hershey

Thomas J. Brandi   ✧   Daniel Dell'Osso*   ✧   Terence D. Edwards   ✧   Casey A. Kaufman*^   ✧   Brian J. Malloy*^

*Also Licensed in Arizona & Nevada | ^Also Licensed in Washington D.C.

On March 1, 2012, Plaintiffs propounded Interrogatories, Set One (consisting of nine interrogatories) and Request for Production of Documents, Set One (consisting of eight document requests) to Hershey.  Hershey responded to this discovery on April 5, 2012, consisting mostly of objections.  The parties agreed to defer further meet and confer efforts regarding this discovery pending mediation.  That mediation unsuccessfully occurred on July 27, 2012.  On August 17, 2012, Plaintiffs renewed meet and confer efforts on the topics set forth below.

## **There Is No Stay On Discovery**

At the time the parties submitted their Joint Status Report, on August 15, 2012, Hershey did not claim that Judge Zimmerman had entered a stay of discovery.  Now, however, Hershey does, citing to a transcript of an April 4, 2012 hearing before Judge Zimmerman on the scope of appropriate notice.  *See* attached Exhibit A.  In fact, Judge Zimmerman actually acknowledged that there was discovery pending, and expressly stated "[l]et that happen."  Ex. A, p. 49, lines 4-7.  Judge Zimmerman then proceeded to rule that, given the posture of the case at the time - getting notice to the affected RSRs and then proceeding with dispatch to mediation - if the parties wanted additional discovery in that time frame they should make a request by letter, so he could determine if it was relevant to notice or mediation efforts.  *Id.* That time frame has concluded and Plaintiffs should be allowed to finally obtain the discovery served six months ago which Judge Zimmerman did allow and, as discussed below, the pending discovery targeted squarely on the 1.5 v. .5 issue that even Hershey believes is an appropriate issue at the present time.

## **Hershey Should Be Ordered To Provide Supplemental Responses To The Requested Discovery**

### **Interrogatory Nos. 6 and 7**

Interrogatory No. 6 asked "[i]f the answer to Interrogatory No. 2 is anything other than an unqualified "yes," state how many hours, on average, YOUR Retail Sales Representatives work in excess of 40 hours per week."  Interrogatory No. 2 asked if Hershey had determined if the RSRs work, on average, 7.5 hours in excess of 40 hours per week, which Hershey responded with a "no."  In response to Interrogatory No. 6, Hershey provided only objections.

Since January 27, 2012, Hershey has paid RSRs overtime up to 47.5 hours per week.  Plaintiffs are seeking to determine where the 47.5 figure came from.  Hershey objects on the grounds that it improperly seeks class-wide discovery and requires an individualized factual inquiry.  The Court has not stayed any discovery in this matter.  Moreover, this case is proceeding as a collective action pursuant to 29 U.S.C. § 216(b) and therefore position-wide discovery is clearly permissible.

---

reclassified the position to non-exempt, Plaintiffs believe such evidence to be highly relevant on whether Hershey should be allowed a reduced penalty, of .5, by claiming there was some type of mutual agreement that RSRs would only get .5. There can be no such agreement in misclassification cases, as Judge Wilken in *Russell* and many other courts have explained. *See, e.g.*, *Hasan v. GPM Investments, LLC*, No. No. 3:07cv1779, 2012 WL 3725693 (D.Conn. Aug. 27, 2012).

Another objection is that it requires an "individualized factual inquiry." Again, this is not well-taken. Judge Zimmerman on two occasions recognized that Hershey treated the RSR position with centralized control, policies and procedures. *See* 8/13/10 Order Permitting Collective Action, *Campanelli* Docket No. 157; *Campanelli v. The Hershey Co.*, 765 F.Supp.2d 1185 (N.D.Cal. 2011), 2/23/11 Order Granting Plaintiffs' Motion for Partial Summary Judgment, *Campanelli* Docket No. 381 ("Summary Judgment Order").

Hershey also "objects to this Interrogatory on the grounds that it is irrelevant, immaterial, and/or not reasonably calculated to lead to the discovery of admissible evidence because it seeks information regarding the current work hours of RSRs, which is after the end of the claimed liability period that must end no later than January 27, 2012 . . . ." (Pg. 6:11-16.) To reach an accommodation on this interrogatory, Plaintiffs were willing to limit the time frame to before January 27, 2012.

As part of the meet and confer process, Plaintiffs requested that Hershey produce any reports Hershey created summarizing "REX" data (REX is an acronym for a handheld device where RSRs input data about their work day, such as the time they spend in stores and doing other chores), as opposed to historical raw REX data, which is what Hershey offered to produce, and has proved to be burdensome for Plaintiffs to effectively utilize. Hershey has not yet responded to that request made in compromise.

Interrogatory No. 7 asked Hershey to "[i]dentify all facts supporting YOUR Affirmative Defenses set forth in YOUR 'Answer and Defenses to Plaintiffs' Purported Amended Collective and Class Action Complaint' (filed on January 20, 2012 at Docket No. 30)." Hershey has asserted 24 affirmative defenses, and Plaintiffs are entitled to discover the factual basis underlying each of these affirmative defenses.

Hershey, again, provided only objections. The objections on the grounds that it improperly seeks class-wide discovery and requires an individualized factual inquiry are without merit for the reasons discussed. The objection that this seeks financial or other trade secret information is not well-taken in light of the protective order. Accordingly, the Court should require Hershey to prove a response to its affirmative defenses or withdraw those defenses for which there is no factual support.

**Request for Production Nos. 3, 4, 5, 7 and 8**

Request No. 3 sought all documents "regarding YOUR determination that a Retail Sales Representative works 7.5 hours of overtime, on average, each week" and Request No. 4 sought all documents "regarding any analysis or time studies regarding YOUR determination that a Retail Sales Representative works 7.5 hours of overtime, on average, each week." Hershey provided only objections.

Since January 28, 2012, Hershey allows RSRs to work up to 7.5 hours of overtime per week without supervisor approval. These document requests sought to discover information relating to this decision. Certainly, documents must exist discussing the "7.5" number and why it was chosen.

Request No. 5 sought all documents "regarding any litigation hold notices that YOU have sent to YOUR sales force regarding this lawsuit." Hershey only provided objections. In *Campanelli*, Hershey produced certain documents it claimed were hold notices. If Hershey has sent a hold notice in this case, they should be produced. If Hershey has not sent a hold notice, please state that no documents exist that are responsive to this request because no hold notice has been sent concerning this matter.

Request No. 7 sought all documents "regarding YOUR decision to reclassify the Retail Sales Representative position as non-exempt from federal and state overtime laws." Again, Hershey only objected. It is clearly relevant on a number of issues in this case, including whether the RSR position was properly classified as exempt and whether Hershey willfully misclassified the position as exempt.

Hershey's Federal Rule of Evidence 407 objection to this (and other) requests is misplaced. Rule 407 applies to the admissibility of evidence, not discoverability. In any event, numerous courts, including courts in California, hold that a change in the position from exempt to non-exempt is admissible. *See, e.g.*, *Sav-on Drug Stores, Inc. v.Super. Ct.,* 34 Cal.4th 319, 330 fn.4 (2004) (trial court "could rationally have regarded the reclassification as common evidence respecting both defendant's classification policies and the [employee's] actual status during the relevant period"); *Wallace v. Countrywide Home Loans, Inc.,* 08-CV-1463, 2009 WL 4349534, at *5 (C.D.Cal. Nov.23, 2009) (denying summary judgment upon finding that genuine issue of fact remains as to whether reclassification was an admission that wages were owed or were instead a resolution to a dispute); *Raniere v. Citigroup Inc.*, 827 F.Supp.2d 294, 322 (S.D.N.Y. 2011); *Rubery v. Buth–Na–Bodhaige, Inc.,* 470 F.Supp.2d 273, 280 n. 6 (W.D.N.Y.2007).

Request No. 8 sought all documents "regarding YOUR announcement to the Retail Sales Representatives regarding YOUR decision to reclassify the Retail Sales Representative position as non-exempt from federal and state overtime laws." Plaintiffs are aware of at least a video presentation by Thomas Smuda, Vice-President of North American Sales, in which he claimed the reason for the change was the litigation involving the RSR position. This video should be produced. Moreover, other documents relating to the announcement to the RSRs must also be produced, as they are relevant on a number of issues in this case, including whether the RSR position was properly classified as exempt and whether Hershey willfully misclassified the position as exempt.

**Discovery Set on Hershey Actual Practices, 1.5 v. 5.**

On August 31, 2012 Plaintiffs served Hershey with five (5) requests for admission, one (1) interrogatory, and one (1) request for production of documents. All of this discovery focused squarely on the 1.5 v. .5 issue that even Hershey contends is presently at issue. In particular, given information that has come to light Plaintiffs sought to have Hershey's official answers and responses on whether or not Hershey has extended a company policy of paying non-exempt salaried employees 1.5, and not .5, to RSRs. Though those answers and responses are not yet due, Plaintiffs conferred with Defendant on the above matters, to avoid having to submit a second letter to the Court on discovery issues so close in time. Defendant has advised that it would argue that the comments from Judge Zimmerman in April bar this discovery today.

To the extent that Judge Zimmerman's directives back during the notice/mediation phases are viewed to still be in play, then the Court should order that such a stay is lifted. In any event, the discovery targeted squarely on whether Hershey has extended its company policy of paying non-exempt salaried employees 1.5 has been extended to include RSRs should be allowed and Hershey be ordered to timely provide complete answers to this discovery.

## Hershey's Position

As set forth in its portion of the parties' Joint Status Report (Dkt. #211), Hershey's position is that all discovery sought by Plaintiffs at this stage is premature and should be deferred until the

Court has resolved the primary dispute – the formula for calculating Plaintiffs' claimed overtime damages – that has prevented the parties from reaching a negotiated resolution through the stalled mediation process they began earlier this year.  The Court has not yet ruled on the parties' competing proposals in the Joint Status Report, so Hershey has informed Plaintiffs that it does not believe it is appropriate to engage in additional discovery until the Court directs the parties how to proceed.  Hershey's proposal would conserve the resources of the parties and the Court by potentially avoiding the need for full discovery, certification and decertification briefing, dispositive motion briefing, and potentially a trial given the prospects for a negotiated resolution of this matter.  Resuming full discovery at this time, therefore, would defeat the purpose of Hershey's request without the benefit of a ruling from the Court as to the proposal.

It is worth noting that (1) Judge Zimmerman approved of deferring full discovery and litigation in this action while the parties worked toward a negotiated resolution (*see* Tr. of 4/14/2012 Hearing, at 49:7-8, attached hereto as Ex. A ("If anybody wants to take further discovery, they're going to have to seek leave of court.")); and (2) Plaintiffs initially agreed with this approach as well and agreed to defer any further responses to their discovery requests until after mediation.  However, now that an initial mediation session has revealed that one limited issue relating to damages must be decided to facilitate a negotiated resolution, Plaintiffs have abruptly changed tactics and want to engage in full discovery and litigation.  Not only are Plaintiffs pursuing substantial discovery through their original demands discussed below, but also they recently served a new round of written discovery requests without Court approval (despite Judge Zimmerman's directions) and seek to forge ahead with certification and summary judgment briefing.[2]

Litigating the case through full discovery, certification/merits briefing, and trial before simply resolving one critical damages issue and then resuming mediation certainly would benefit the parties' lawyers, including Plaintiff's counsel who could then justify a far more substantial fee award as part of any court-approved resolution.  But it would not benefit the class and would be an unfortunate waste of the Court's and the parties' resources.  Hershey thus renews its request that the Court implement an appropriate procedure to allow an early ruling on the question of how damages in this action, if any, would be awarded in the event that – after full discovery and a potential motion for decertification of the collective action – some or all of the named and opt-in Plaintiffs prevailed on summary judgment and/or at trial.

If the Court rejects Hershey's proposal in the Joint Status Report at the time it rules on the disputes presented herein and/or declines to stay discovery generally pending a resolution of the

---

[2] Plaintiffs raise above the issue of new discovery that they have served despite the facts that (1) responses to this discovery are not yet due; and (2) the parties have only "conferred" regarding this new discovery via a single exchange of emails, not the telephonic or face-to-face conference required by Your Honor's procedures.  Plaintiffs are correct that Hershey's position is that they should have sought leave of Court before serving this new discovery.  Although this new discovery is ostensibly targeted at what Plaintiffs label the "1.5 v. .5" issue, Plaintiffs refused Hershey's proposal that the Court allow limited discovery and briefing on this issue to facilitate a negotiated resolution.  Without waiver of potential objections to this new discovery that are not even yet due, if Plaintiffs would agree to Hershey's proposal to confine the litigation at this stage to the question of the formula used to calculate claimed overtime damages and then resume the mediation, the parties likely could work cooperatively to determine what discovery might be needed as part of that process.  However, Plaintiffs do not cite any legal authority whatsoever to suggest that discovery into how Hershey elects to pay hourly employees after a reclassification is pertinent to the calculation of claimed damages in a misclassification case for individuals who had been paid a salary for all hours worked, and Hershey is not aware of any that exists.

parties' competing proposals in that Report, Hershey's positions as to each of the specific issues raised by Plaintiffs are set forth below.[3]

**Interrogatory No. 6**

Interrogatory No. 6 asks Hershey how many hours, on average, its RSRs worked in excess of 40 hours per week over the course of several years. Hershey objected to this interrogatory on multiple grounds, including in particular the burden that the Interrogatory imposes on Hershey by purporting to require it to engage in an expansive and inherently individualized factual inquiry into each RSR's varying work hours, including interviews or depositions of the RSRs and the review of various data. Absent such an endeavor, which still could not provide a precise answer for the reasons discussed below, Hershey simply does not have the information requested. In any event, the "average" work hours of RSRs generally is not informative of the measure of Plaintiffs' claimed damages if they were to prevail on the merits – the actual hours worked by each during each week of the claimed liability period – and thus not discoverable.

Before this year, RSRs did not record their work hours because they were classified as exempt from the overtime requirements of federal and state law. Without any concession that RSRs do not satisfy one or more exemptions, which Hershey has asserted as defenses in this action, Hershey nevertheless began early this year to have RSRs record their work hours and to pay them overtime compensation, which it hoped would eliminate continued costly and distracting litigation over their exempt status arising out of the *Campanelli* action. But Hershey cannot know for certain how many hours, on average, RSRs worked while classified as exempt.

In an attempt to reach a compromise on this Interrogatory, Hershey offered to provide Plaintiffs with the records (1) of each current Plaintiff's reported work hours during 2012 as informative of their earlier work hours, and (2) from each individual Plaintiff's handheld device on which they had been asked for years to record the times of store visits even before 2012. Plaintiffs rejected this offer, but even if RSRs' "average" work hours were pertinent to this action (which it is not as discussed above), Hershey is entitled to provide records pursuant to Federal Rule of Civil Procedure 33(d). The burden of analyzing these records would be substantially the same for both parties and, therefore, Hershey need only "specify the records that must be reviewed" and produce them. Fed. R. Civ. P. 33(d). Indeed, Rule 33(d) was created so that a party need not "engage in burdensome or expensive research into his own business records to give an answer." Fed. R. Civ. P. 33(d) Advisory Committee's Note – 1970 Amendment.

**Interrogatory No. 7**

Interrogatory No. 7 asks Hershey to identify <u>all</u> facts supporting <u>all</u> of its affirmative[4] defenses in this case. This is the type of premature, inappropriate, and unduly burdensome contention interrogatory that courts in the Northern District of California routinely reject and has been labeled as "a serious form of discovery abuse." *See In re Convergent Technologies*, 108 F.R.D. 328, 337-39 (N.D. Cal. 1985) ("[T]here is substantial reason to believe that the early knee jerk filing of sets of contention interrogatories that systematically track all the allegations in an

---

[3] In this letter, Hershey addresses only its primary objections to the discovery requests at issue. Hershey preserves all of the objections raised in its formal responses and objections to Plaintiffs' discovery requests, including, but not limited to, its objections to the production of attorney-client communications and documents or information constituting attorney work product.

[4] Hershey further objects to this request as vague because it fails to specify which of Hershey's many defenses in its Answer and Defenses – not all of which are affirmative – it targets.

opposing party's pleadings is a serious form of discovery abuse. Such comprehensive sets of contention interrogatories can be almost mindlessly generated, can be used to impose great burdens on opponents, and can generate a great deal of counterproductive friction between parties and counsel"; further noting that the proponent of such interrogatories would have to show that the interrogatories were limited and specifically crafted questions seeking responses that would "contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56"); *In re eBay, Inc.*, No. 07-1882, 2008 WL 5212170, at *2 (N.D. Cal. 2008) (finding use of contention interrogatories to be premature and further holding "pursuant to Rule 26, because the contention interrogatories eBay advances seek 'all facts' supporting Malone's allegations, they are overly broad and unduly burdensome on their face"); *Roberts v. Heim*, 130 F.R.D. 424, 427 (N.D. Cal. 1989) ("Although courts have generally approved of appropriately timed contention interrogatories because they can narrow issues, avoid wasteful preparation and expedite litigation, courts are reluctant to require a party to 'write basically a portion of their trial' for the other parties."); *see also White Burs, Inc. v. Neo-Flo, Inc.*, No. Civ. A. 02-3656, 2003 US Dist LEXIS 7718, 2003 WL 21250553 at *1 (E.D. Pa 2003) (finding it appropriate to defer to the very "end of discovery the responses of contention interrogatories, which ask a party to state all facts and theories upon which it bases a contention, so that the party does not have to articulate theories of its case which are not yet fully developed").

Moreover, Plaintiffs' demand for Hershey to identify each fact that it believes through its counsel may support any given defense necessarily demands the mental impressions of Hershey's counsel and thus seeks information protected by the attorney work product doctrine. At the appropriate time, Plaintiffs could seek discovery of facts that their counsel believes will support their claims or undermine their defenses through requests tailored to elicit those facts. However, they cannot simply ask Hershey to lay out for them in an interrogatory response its entire theory of how to litigate all of its defenses to all of their claims.

**Requests for Production Nos. 3 and 4**

These requests for production seek documents related to what Plaintiffs refer to as Hershey's "determination that a Retail Sales Representative works 7.5 hours of overtime, on average, each week." As Hershey informed Plaintiffs in its response to their Interrogatory No. 2, however, Hershey never made a determination that an RSR works 7.5 hours of overtime, on average, each week. Plaintiffs do not challenge Hershey's response to Interrogatory No. 2, but they persist in seeking documents related to a "determination" that never occurred. Hershey's fundamental objection to these requests in addition to what is set forth in its formal objections is simple – it is impossible for a document to relate to a "determination" that never occurred and, therefore, no responsive documents exist. The premise of these requests is flawed, and Hershey cannot conjure up documents related to a "determination" that never occurred.

Hershey further objects to the relevance of these requests. As Plaintiffs admit above, these requests were prompted by Hershey's decision that <u>after the reclassification</u>, RSRs would be allowed to work up to 7.5 hours of overtime per week without seeking approval from their supervisors. Yet, Plaintiffs concede that their claims extend only up to the date of the reclassification and not beyond it. This interrogatory seeks information regarding the hours worked by RSRs post-reclassification, which Plaintiffs have advised Hershey they believe are irrelevant to work hours prior to reclassification, so based on their position it is not reasonably calculated to lead to the discovery of admissible evidence.

**Request for Production No. 5**

The "litigation hold notices" sought by Request for Production No. 5 – communications from Hershey's counsel directing the preservation of documents, data and information in connection with this litigation – are subject to attorney work product protection and also represent attorney-client privileged communications and, therefore, are not a proper subject of discovery. *See In re eBay Antitrust Litig.*, No. C07-01882, 2007 WL 2852364, at *2 (N.D. Cal. Oct. 2, 2007) (holding that "document retention notices" distributed by eBay's in-house counsel to 600 employees were both attorney-client privileged communications and attorney work-product and thus eBay was not required to produce notices). As in *eBay*, the litigation hold notices sought by Plaintiffs were distributed by Hershey's in-house counsel to its employees and were labeled as attorney-client privileged communications and attorney work-product.[5]

Apparently recognizing that their request sought privileged documents, Plaintiffs now have asserted during the meet/confer discussions that Hershey must create a privilege log listing the litigation hold notices distributed by in-house counsel to each recipient. However, Hershey is not required to log post-Complaint communications even if they related to this litigation and are responsive to Plaintiffs' requests. *See Netbula, LLC v. Chordiant Software, Inc.*, No. C08-00019, 2009 WL 3919495, at *3 (N.D. Cal. Nov. 18, 2009) (holding that "defendants need not provide a privilege log" as to privileged communications or work product "that post-date the filing of the instant action"). Surely Plaintiffs' counsel does not intend to provide a privilege log of every communication they may have with their clients during this litigation.

**Requests for Production Nos. 7 and 8**

Requests for Production Nos. 7 and 8 seek all documents regarding Hershey's decision to begin recording the work hours of RSRs and paying them overtime compensation and Hershey's announcement of these changes. In its Responses and Objections, Hershey objected on several grounds, including that the requests seek documents that are protected by the attorney-client privilege, the attorney work product doctrine, or other applicable privileges; are overbroad and unduly burdensome; and extend outside the claimed liability period. Hershey further objected that these requests are not relevant and not reasonably calculated to lead to the discovery of admissible evidence as to the claims or defenses of any party in this action because documents related to Hershey's decisions are inadmissible under Federal Rule of Evidence 407.

Plaintiffs have argued during the parties' meet/confer efforts, without further explanation, that the documents are relevant to whether RSRs properly were classified as exempt before 2012 and whether Hershey willfully misclassified RSRs as Plaintiffs contend. But Plaintiffs have failed specifically to demonstrate how documents responsive to these requests are relevant to their claims and may lead to admissible evidence in a case where liability and damages determinations turn on the Plaintiffs' actual day-to-day activities assessed relative to the requirements of certain overtime exemptions rather than any Hershey classification decision. *See Haggarty v. Wells Fargo Bank, N.A.*, No. 10-2416, 2012 WL 3939321, at *1 (N.D. Cal. Sept. 4, 2012) ("When the responding party objects to a discovery request, the party moving to compel bears the burden of demonstrating why the objections are not justified and why the information sought is relevant.").

First, the documents sought are not relevant because a business decision in order to limit future litigation is not an admission that RSRs do not qualify as exempt. *See Clarke v. JP Morgan Chase Bank, N.A.*, 2010 WL 1379778, at *22 (S.D.N.Y. Mar. 26, 2010). In *Clarke*, the plaintiff claimed that his employer's decision to reclassify him as non-exempt was evidence that he had previously been misclassified and was entitled to overtime for the period prior to reclassification. *Id.* The court held, however, that the reclassification was not relevant to the question of whether the plaintiff had been misclassified and granted summary judgment to the employer based upon

---

[5] If necessary, Hershey is prepared to provide the litigation hold notice for *in camera* review.

its examination of the employee's job duties. *Id.* The court explained that an employer's decision to take a conservative approach and pay overtime does not make it "lose the exemption." *Id.* at *21 (citing 29 C.F.R. § 541.604(a)). Thus, regardless of whether an individual is paid overtime or not, courts examine the actual job duties and responsibilities of the employee in question to determine whether an exemption applies.[6] *Id.* at *22. Likewise, in *Wallace v. Countrywide Home Loans, Inc.*, 2009 WL 4349534 (C.D. Cal. Nov. 23, 2009), cited by Plaintiffs, the court rejected the contention that an offer to pay back overtime to employees after a reclassification was a concession of misclassification. *Id.* at *6. Thus, Hershey's classification and treatment of Plaintiffs after the liability period is not relevant their exempt status during the liability period. *See Ferrell v. Gwinett County Bd. of Educ.*, 481 F. Supp. 2d 1338 (N.D. Ga. 2007) (granting summary judgment for employer where plaintiff's duties satisfied administrative exemption, despite evidence that plaintiff had been reclassified); *Mike v. Safeco Ins. Co. of Am.*, 274 F. Supp. 2d 216, 221 (D. Conn. 2003) (concluding that the "merits of [the plaintiff's] claim will turn upon evidence relating to [his] day-to-day tasks, and not upon any Safeco company policy or decision," where the defendant had reclassified those in plaintiff's position); *Mitchell v. PEMCO Mut. Ins. Co.*, 142 P.3d 623 (Wash. App. Div. 2006) ("Contrary to Mitchell's argument, PEMCO's reclassification of adjusters does not amount to an admission that they had been wrongly classified before.").

Further, even if reclassification were relevant to Plaintiffs' claims, which it is not, it would be inadmissible under Fed. R. Evid. 407 as a subsequent remedial measure. *See, e.g.*, *Blaney v. Charlotte-Mecklenburg Hosp. Auth.*, No. 3:10-cv-592, 2011 U.S. Dist. LEXIS 105302, at *30 (W.D.N.C. Sept. 16, 2011) (holding in FLSA action that FRE 407 precluded evidence regarding change in timekeeping policy); *Liger v. New Orleans Hornets NBA P'ship*, No. 05-1969, 2008 WL 348800, at *2 (E.D. La. Feb. 6, 2008) (holding, where defendant argued that FLSA compliance was a subsequent remedial measure, that "evidence of post-lawsuit compliance with the FLSA is not relevant to determining whether [defendant] can claim the exemption during the period of time before the lawsuit was filed"); *Carda v. E.H. Oftedal & Sons, Inc.*, No. 04-5036, 2005 U.S. Dist. LEXIS 26375, at *3 (D.S.D. Mar. 23, 2005) (explaining that excluding evidence of changes to record-keeping policy, which plaintiff sought to introduce in support of claim for overtime, "supports the public policy of preventing a party from being punished for making positive changes"); *Abel v. Dep't of Corr. of the State of Kansas*, No. 93-4070, 1995 WL 106535, at *1 (D. Kan. Jan. 12, 1995) (excluding evidence of policy changes regarding roll calls and meal breaks; "[i]f the defendant changed it policies in response to [a previous FLSA lawsuit], then these changes are likely to be a subsequent remedial measure under Rule 407").[7]

Plaintiffs' attempt to obtain documents regarding Hershey's decision to pay overtime to establish culpable conduct by Hershey prior to 2012 would undermine the public policy underlying Fed. R. Evid. 407 by deterring companies from voluntarily reviewing their classification decisions

---

[6] *See also Myers v. The Hertz Corp.*, 624 F.3d 537, 549-50 (2d Cir. 2010) (holding that the employer's classification of employees "does not establish whether all plaintiffs were *actually* entitled to overtime pay . . . the question of entitlement to overtime pay is answered by examining the employee's actual duties"); *Wood v. Kinetic Sys., Inc.*, 766 F. Supp. 2d 1080, 1088 (D. Idaho 2011) (holding that classification was "irrelevant" because "'[e]conomic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA'") (quoting *Real v. Driscoll Strawberry Assoc., Inc.*, 603 F.2d 748, 755 (9th Cir. 1979)).

[7] Courts similarly have applied Fed R. Evid. 407 in other types of employment actions. *See, e.g.*, *Hamilton v. The City of New York*, 627 F.3d 50, 53-54 (2d Cir. 2010) (exclude evidence of an employer's modification of its employment policy in a discrimination action); *Stahl v. Bd. of County Comm'rs*, 101 F. App'x 316, 321 (10th Cir. 2004) (affirming decision to exclude evidence that defendant suspended employment test at issue in discrimination suit).

Case4:11-cv-05117-KAW   Document215   Filed09/18/12   Page10 of 10

and reclassifying their employees, and more generally voluntarily reviewing their compliance with the FLSA and other laws and making changes. *Cf. Dowling v. Am. Hawaii Cruises, Inc.*, 971 F.2d 423, 427 (9th Cir. 1992) (suggesting that post-accident reports are not discoverable in negligence suits because "the candid analysis of the causes of accidents is more likely to be stifled by a disclosure requirement," and further noting that Fed. R. Evid. 407 recognizes this policy consideration by barring evidence of subsequent remedial measures); *Cann v. Ford Motor Co.*, 658 F.2d 54, 60 (2d Cir. 1981) (recognizing that "people will be less likely to take subsequent remedial measures if evidence of [such measures] may be used against them").

The decisions cited by Plaintiffs are inapposite. *See Sav-on Drug Stores, Inc. v. Superior Court*, 34 Cal. 4th 319 (2004); *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294 (S.D.N.Y. 2011); *Rubery v. Buth-Na-Bodhaige, Inc.*, 470 F. Supp. 2d 273 (W.D.N.Y. 2007). They do not indicate that the reclassifications were business decisions in response to litigation – a subsequent remedial measure within the scope of Fed. R. Evid. 407. Plaintiffs' reliance on *Wallace* is also misplaced to suggest that a reclassification decision is admissible. In that case, the defendants did not raise a Rule 407 objection. Nor did the court find that evidence of reclassification was determinative of prior misclassification. In fact, the court rejected the contention that an offer to pay back overtime to employees after a reclassification was a concession of misclassification. 2009 WL 4349534, at *6.

In addition to Rule 407 as grounds to exclude the evidence, facts relating to the reclassification and its announcement are barred by Rule 403 as far more prejudicial to Hershey than it is probative, if at all (which it is not), of exempt status. *See, e.g.*, *Nelson v. Costco Wholesale Corp.*, No. 03-cv-219, 2007 WL 914311, at *4-6 (E.D.N.Y. Mar. 23, 2007) (excluding evidence of subsequent repairs under FRE 403 because "whatever probative value [that existed] was far outweighed by the potential that the jury would consider the repairs for the very purpose that Rule 407 was enacted to prevent – namely, evidence of [defendant's] fault"); *Abel*, 1995 WL 106535, at *1 (observing that the probative value of the evidence of policy changes must not be outweighed by its unfair prejudice or its likelihood of misleading or confusing the jury). Thus, even if evidence relating to the decision to begin paying overtime in 2012 has some any probative value – which it does not – that value is substantially outweighed by unfair prejudice.

In addition to the arguments raised above, Plaintiffs have failed specifically to explain how documents regarding the "announcement" of the reclassification are relevant to their claims. As previously discussed, liability and damages determinations in this case will not turn on any Hershey policy, but rather will require an assessment of Plaintiffs' day-to-day activities and certain overtime exemptions. *Clarke*, 2010 WL 1379778, at *22. Communications with Plaintiffs regarding Hershey's decision to begin recording the work hours of RSRs and paying them overtime compensation are not pertinent to their job duties and work hours during the claimed liability period. Because Plaintiffs have failed to carry their burden, the requests for documents in response to Requests for Production Nos. 7 and 8 should be denied.

    Very truly yours,

    /s/ Thomas J. Brandi
    THOMAS J. BRANDI
    *Attorney for Plaintiffs*

    /s/ Michael J. Puma
    Michael J. Puma
    *Attorney for Defendant*