UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

RYAN ZULEWSKI, et al.,

Plaintiffs,

v.

THE HERSHEY COMPANY,

Defendant.

Case No.: CV 11-05117-KAW

ORDER REGARDING THE PROPER CALCULATION OF DAMAGES UNDER THE FAIR LABOR STANDARDS ACT

## I. INTRODUCTION

The parties have requested that the Court make an early determination regarding the proper calculation of overtime time pay under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*, in the misclassification context, to facilitate settlement. The Court had the parties brief the issue and heard oral argument on January 17, 2013.

After careful consideration of the parties' arguments, the Court finds that the one-and-one-half premium is the correct multiplier in misclassification cases.

## II. BACKGROUND

On October 19, 2011, Plaintiffs filed a Fair Labor Standards Act (FLSA) collective action alleging that their retail sales representatives ("RSRs") position was misclassified, such that they were wrongfully denied overtime compensation for all hours worked in excess of forty hours per week. (*See* Compl., Dkt. No. 1.) This is the second FLSA collective action involving RSRs at the The Hershey Company ("Hershey"),[1] and is expected to be the last, because Hershey reclassified

[1] This case is related to the first collective action *Campanelli v. The Hershey Company*, C-08-01862-BZ (N.D. Cal.). That case settled before the presiding judge made a ruling on the relevant overtime premium.



United States District Court
Northern District of California

United States District Court
Northern District of California

the position as non-exempt in January 2012. At the Case Management Conference on November 20, 2012, the Court asked the parties to brief the damages calculation issue. A hearing was held on January 17, 2013.

## III. DISCUSSION

### A. The Fair Labor Standards Act and the Fluctuating Work Week

Congress enacted the Federal Labor Standards Act (FLSA) in 1938 to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). For that reason, the FLSA requires employers to pay overtime compensation to employees who work more than 40 hours per week "at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a)(1). The employee's "regular rate" is "the hourly rate that the employer pays the employee for the normal, nonovertime forty-hour workweek." *Flood v. New Hanover County*, 125 F.3d 249, 251 (4th Cir. 1997) (citing *Walling v. Youngerman-Reynolds Hardwood Co.,* 325 U.S. 419, 424 (1945)). If the employee is paid on a weekly salary basis, the employee's regular hourly rate of pay is determined by dividing the weekly salary by the number of hours that it intends the weekly salary to compensate. *See* 29 C.F.R. § 778.113 (1996).

In *Missel*, the U.S. Supreme Court provided an exception for employees who are paid "a fixed weekly wage regardless of the length of the workweek," now referred to as the Fluctuating Work Week (FWW) Method. *See Overnight Motor Transport Co. v. Missel*, 316 U.S. 572 (1942). The FWW method provides that an employee is paid "straight time" for all hours worked, but is then entitled to the additional "half-time" component of the FLSA-mandated "one and one-half time" overtime payment for all hours worked in excess of forty hours per week. *Missel*, 316 U.S. at 581; *see also Urnikis-Negro v. American Family Property Svs.*, 616 F.3d 665, 675 (7th Cir. 2010).

In 1968, the Department of Labor promulgated 29 C.F.R. § 778.114, which codified the Supreme Court's decision in *Missel*. *See Russell v. Wells Fargo & Co.*, 672 F. Supp. 2d 1008, 1012 (N.D. Cal. 2009); *see also Urnikis-Negro*, 616 F.3d at 675. The rule offers a more detailed explanation of FWW method of calculating overtime pay and explains when it may be used. The

rule states that overtime hours under the method may be compensated at a premium of one-half the employee's "regular" rate, which in turn may fluctuate on a weekly basis. In order to take advantage of the FWW method, there must be a "clear mutual understanding of the parties that the fixed salary is compensation (apart from overtime premiums) for the hours worked each workweek, whatever their number, rather than for working 40 hours or some other fixed weekly work period." 29 C.F.R. § 778.114(a). And overtime premiums must be paid contemporaneously with regular pay. 29 C.F.R. § 778.114(c).

The FWW method results in workers being paid less per hour the more hours they work in a single week. As explained in *Russell*, an employee who works 61 hours or more per week makes less per overtime hour than a regular rate employee makes for a non-overtime hour:

> [A]n employee who earns $500 per week and works 61 hours effectively makes $12.30 per overtime hour ($500 divided by 61 hours for a regular rate of $8.20, yielding an overtime rate of $4.10). If the employer were to hire an additional employee who worked 40 hours per week, that employee's effective hourly rate would be $12.50 ($500 divided by 40 hours). Thus, if the economically rational employer is able to make use of the fluctuating workweek, it should push its employees to work more than 60 hours a week (at a marginal rate of $12.30/hr and lower as the hours climb) rather than hire new employees (at a marginal rate of $12.50/hr regardless of the number of hours worked).

*Russell*, 672 F. Supp. 2d at 1012 n. 3.

At the hearing, counsel for Hershey performed a hypothetical math demonstration, in which an employee who makes $500 per week and works 50 hours, results in a FWW method calculation of $10 per hour. Defense counsel proceeded to show that being paid $500 per week for straight time, plus the extra $5 per hour for ten hours of overtime is equivalent to being paid $10 per hour for the first forty hours worked, plus one-and-one-half times the hourly rate (or $15) per hour for the ten overtime hours for a weekly compensation of $550. But this equation is deceiving because the calculation presumes that the employee's regular rate of pay was the $10 per hour calculated by the FWW method, rather than the predominant method which calculates the hourly rate by dividing the weekly salary of $500 by a typical 40 hours per week, which is $12.50 per hour. *See* 29 C.F.R. § 778.113. The hourly (non-FWW) employee would make $500

United States District Court
Northern District of California

regular pay for the first forty hours worked, plus $18.75 per overtime hour for hours 41 to 50, for a total weekly compensation of $687.50.

Defense counsel claimed that using the 1.5 multiplier would result in a windfall to the employee, because the employee was already paid straight time for the hours worked, and is only owed the additional half-time premium for all overtime hours. This argument, however, presumes the existence of a FWW. If there is no FWW, then the employee was never compensated for those last ten hours of work, and is owed time-and-a-half of his regular rate of pay for all hours worked in excess of forty hours per week.

**B. Applicability of Fluctuating Work Week in Misclassification Cases**

Hershey asserts that Plaintiffs were not misclassified, but even if they were, that the FWW method's one-half premium for all hours worked in excess of forty hours is appropriate, because they have already been compensated for "straight time" for all hours worked. Hershey urges the application of *Missel*, and the rejection of § 778.114.

Plaintiffs urge the complete rejection of the FWW method in the misclassification context on the grounds that *Missel* was codified in § 778.114, and Hershey cannot satisfy the rule's requirement that overtime compensation be paid contemporaneously with regular pay.

There is a split as to whether the FWW method may be applied retroactively in misclassification cases, and the Ninth Circuit has not directly addressed this issue.[2] *See Russell*, 672 F. Supp. 2d at 1014. For that reason, this Court must choose between two conflicting lines of federal decisions.

1. Cases that Allow Retroactive Application of the FWW Method

The first line of cases adopts the approach that, so long as the parties reached a clear mutual understanding that, while an employee's hours may fluctuate, his compensation would

[2] Hershey maintains that the Ninth Circuit's decisions in *General Electric v. Porter*, 208 F.2d 805 (9th Cir. 1953), and *Brennan v. Valley Towing Co., Inc.*, 515 F.2d 100 (9th Cir. 1975) are controlling. *Porter*, however, was decided before the Department of Labor promulgated § 778.114. And *Brennan* did not involve misclassification, but rather whether an employment contract involving a fixed monthly salary for regular, forty-seven hour workweeks, that included a compensation plan for hours worked in excess of forty-seven, comported with the FLSA. 515 F.2d at 103. These cases are inapposite.

not, that the calculation for unpaid overtime would be one-half pay for each hour worked in excess of forty hours per week, because the employee would have already been paid "straight time" for all hours worked. *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valerio v. Putnam Assoc. Inc.*, 173 F.3d 35, 39–40 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir. 1988). These cases did not require overtime to be paid contemporaneously with regular compensation based on *Bailey v. County of Georgetown*, 94 F.3d 152 (4th Cir. 1996), a case that did not address remedial payments to misclassified employees. *See Russell*, 672 F. Supp. 2d at 1015.

The parties agree that the elements of the FWW method set forth in 29 C.F.R. § 778.114 have not been satisfied in this case, because there was no contemporaneous payment of overtime premiums. Hershey relies on *Urnikis-Negro* and *Desmond* for the proposition that the Court can reject § 778.114 and rely on *Missel* to retroactively apply the FWW method in the misclassification context. *See Urnikis-Negro*, 616 F.3d at 679-81; *Desmond v. PNGI Charles Town Gaming, LLC*, 630 F.3d 351, 357 (4th Cir. 2011). Both of these cases rejected § 778.114 for being forward-looking rather than remedial, because misclassification cases, by their very nature, do not comport with the contemporaneous overtime compensation requirement. *Urnikis-Negro*, 616 F.3d at 678-79; *Desmond*, 630 F.3d 356-57. Instead, both Circuits, after finding that the parties agreed to a fixed weekly salary, applied *Missel*'s FWW method to misclassification cases by first requiring the calculation of the weekly hourly rate, and then applying the 50% multiplier to all hours worked in excess of forty hours per week. *Urnikis-Negro*, 616 F.3d at 678-79; *Desmond*, 630 F.3d 356-57.

The cases relied on by Hershey are not controlling. This Court is not persuaded by the reasoning behind the retroactive application of FWW method in the misclassification context, because it presumes that the employees possessed a clear understanding that their fixed compensation—which did not provide for overtime premiums—was for all hours worked. *See* discussion *infra* Part III.B.2. For that reason, there is no need to address whether § 778.114 can be properly rejected, because, as discussed below, the requirements in *Missel* cannot be met. *Id.*

///

2. Cases that Do Not Allow Retroactive Application of the FWW Method

The second line of cases looks more closely at the language of 29 C.F.R. § 778.114, which requires both a clear mutual understanding of the parties that the fixed salary is compensation for all hours worked each week and the contemporaneous payment of overtime as it is earned. *Russell v. Wells Fargo and Co.*, 672 F. Supp. 2d 1008 (N.D. Cal. 2009); *Scott v. OTS Inc.*, 2006 WL 870369, at *12 (N.D. Ga.); *Hunter v. Sprint Corp.*, 453 F. Supp. 2d 44, 58-62 (D.D.C. 2006); *Cowan v. Treetop Enters.*, 163 F. Supp. 2d 930, 941 (M.D. Tenn. 2001); *Rainey v. Am. Forest & Paper Assoc.*, 26 F. Supp. 2d 82, 99-102 (D.D.C. 1998). These cases reject the FWW method because overtime premiums were not paid contemporaneously with regular compensation, and misclassification, by nature, does not comport with the existence of a clear mutual understanding that the compensation is for all hours worked.

So, even if this Court does not require contemporaneous payment of overtime premiums, the failure to meet the "clear mutual understanding" requirement precludes the application of the FWW method. The line of cases that reject § 778.114, but still rely on *Missel* to apply the half-time premium under the FWW method, still require an agreement between the employer and the employee that the weekly compensation would compensate for all hours worked. *See Urnikis-Negro*, 616 F.3d at 680. As the court in *Blotzer v. L-3 Communications Corp.* acknowledged, however, the very nature of misclassification belies the existence of a clear mutual understanding:

> In a misclassification case, at least one of the parties initiated employment with the belief that the employee was exempt from the FLSA, paid on a salary basis, and therefore not entitled to overtime. When an employee is erroneously classified as exempt and illegally being deprived of overtime pay, neither the fourth nor fifth legal prerequisites for use of the FWW method is satisfied. The parties do not have a "clear, mutual understanding" that a fixed salary will be paid for "fluctuating hours, apart from overtime premiums" because the parties have not contemplated overtime pay.

CV-11-274-TUC-JGZ, 2012 WL 6086931, at *10 (D. Ariz. Dec. 6, 2012) (citations omitted).

The court in *Ransom v. M. Patel Enters., Inc.* acknowledged the lack of employee consent to FWW in the misclassification context:

> The significance of the employee's lack of knowledge of non-exempt status cannot be overstated. The fundamental assumption underpinning the FWW is that it is fair



United States District Court
Northern District of California

> to use it to calculate overtime pay because the employee consented to the payment scheme. But in the context of an FLSA misclassification suit when consent is inferred from the employee's conduct, that conduct will always, by definition, have been based on the false assumption that he was not entitled to overtime compensation. The job will have been advertised as a salaried position. The employee, if he raised the issue, will have been told that the salary is all he will receive, regardless of how many hours he works. That is the very nature of a salaried, exempt position. When it turns out that the employer is wrong, and it is learned that the FLSA required the employer to pay the employee an overtime premium, the notion that the employee's conduct *before* he knew this is evidence that the employee somehow consented to a calculation method for the overtime pay *that no one even knew was due*, is perverse. If the FWW requires consent in some fashion, the employee's actions before he knew he was due overtime pay just cannot logically be the basis of that consent.

825 F. Supp. 2d 799, 810 n. 11 (W.D. Tex. 2011). If RSRs are found to be misclassified as exempt employees, the inquiry regarding whether individual RSRs "consented" to a FWW is improper because when employees are misclassified, they have unwittingly agreed to forego their entitlement to overtime time—a right which cannot be legally waived. *See Russell*, 672 F.Supp. 2d at 1014 (citing *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740 (1981)); *see also Blotzer v. L-3 Communications Corp.*, CV-11-274-TUC-JGZ, 2012 WL 6086931, at *10 (D. Ariz. Dec. 6, 2012). The RSRs never had an opportunity to agree to a true FWW, because overtime was not included in the compensation package offered by Hershey. As the *Ransom* court recognized, the mere acceptance of a misclassified position does not amount to an agreement to a FWW. 825 F. Supp. 2d at 810 n. 11. To find otherwise would ignore the realities of employer-employee bargaining power regarding classification and compensation for the lower wage, non-executive positions the FLSA was intended to protect.

The public policy rationale behind the passage of the FLSA is also at odds with the retroactive application of the FWW method. The FLSA's intention was to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202. Retroactive application of the FWW method incentivizes employers to misclassify their employees by minimizing damages in the unlikely event that they are sued. It also goes against the FLSA's intention of encouraging



United States District Court
Northern District of California

employers to spread employment among more workers, rather than employing fewer workers who must then work longer hours. *Blotzer*, 2012 WL 6086931, at *11.

Despite the existence of persuasive authority to the contrary, the retroactive application of the FWW method in the misclassification context does not square with *Missel*, because *Missel* requires an agreement between the parties that the fixed weekly salary was compensation for all straight time. For the reasons outlined above, such an agreement is not present in misclassification cases. In light of the FLSA's remedial purpose, this district's *Russell* decision, and other district court decisions, this Court agrees with the second line of cases that prohibit the retroactive application of the FWW method in the misclassification context. As such, the inapplicability of the FWW method gives way to the predominant rate of overtime compensation of time-and-a-half.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the Fluctuating Work Week method is not applicable in the misclassification context, and the traditional time-and-a-half multiplier applies if the RSRs are found to have been misclassified as exempt employees.

IT IS SO ORDERED.

Dated: February 20, 2013

KANDIS A. WESTMORE
United States Magistrate Judge